# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

PHILLIP HAMMOCK                                                                    PETITIONER


v.                              NO. 5:10CV00149 SWW/HDY


RAY HOBBS, interim Director of the                                          RESPONDENT
Arkansas Department of Correction


### FINDINGS AND RECOMMENDATION


### INSTRUCTIONS


      The following findings and recommendation have been sent to United States

District Judge Susan Webber Wright.  Any party may serve and file written objections to

these findings and recommendation.  Objections should be specific and should include

the factual or legal basis for the objection.  If the objection is to a factual finding,

specifically identify that finding and the evidence that supports your objection.  An

original and one copy of your objections must be received in the Office of the United

States District Court Clerk no later than fourteen (14) days from the date of the findings

and recommendation.  The copy will be furnished to the opposing party.  Failure to file

timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.   The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, Arkansas 72201-3325

DISPOSITION

STATE COURT PROCEEDINGS.  The record reflects that in June of 1996, petitioner Phillip Hammock ("Hammock") pleaded guilty in the State of Washington to third degree rape.  "He was sentenced to fourteen months in prison, with two additional years of community placement, and required to register as a sex offender in Washington."  See Hammock v. State, 2009 WL 1405871 (May 20, 2009).

Hammock eventually came to reside in the State of Arkansas.  He registered as a sex offender with Arkansas officials in March of 2002 and continued to regularly verify his status as a sex offender until he stopped doing so in February of 2004.  Arkansas officials subsequently charged him with failing to register as a sex offender.  In June of 2008, he was convicted in Drew County, Arkansas, Circuit Court of failing to register as a sex offender.  He was sentenced as an habitual offender to twenty-one years in the custody of the Arkansas Department of Correction and its interim Director, respondent Ray Hobbs ("Hobbs").

Hammock appealed his conviction to the Arkansas Court of Appeals and advanced the following two claims: (1) his conviction was an unconstitutional ex post facto application of the law, and the trial court erred in applying the Arkansas sex offender registration act, as his conviction from Washington pre-dated the effective date of the Arkansas sex offender registration act; and (2) a Batson challenge.  The state Court of Appeals found no reversible error and affirmed his conviction.

In November of 2009, Hammock filed a state petition to correct an illegal sentence in Drew County, Arkansas, Circuit Court.  The precise ground he advanced in the petition is not clear.  It was denied that same month, and it does not appear that he appealed its denial.

In January of 2010, Hammock filed a state petition for a writ of habeas corpus in Drew County, Arkansas, Circuit Court.  Again, the precise ground he advanced in the petition is not clear; he appears to have maintained that he was being incarcerated for a charge that state officials had agreed to <u>nolle prosequi</u>.  Hobbs maintained in his response to the petition at bar that "[a]s far as [he] has been able to determine, the [trial court] has not yet ruled on [Hammock's petition]."  <u>See</u> Document 7 at 2.

<u>FEDERAL COURT PROCEEDINGS</u>.  Hammock commenced the proceeding at bar by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254.[1]  In the petition, he advanced the following two claims:

> Ground one.  Applying state statute Ark. Code Ann. 12-12-905 to petitioner is in violation of the EX POST FACTO Clause and the state court interpretation of this issue is contrary to and in conflict with federal law.
>
> Supporting facts.  [T]he statute itself states in its clear language that it does not apply to crimes occurring on or before August 1, 1997 and this excludes your petitioner for his adjudication of guilt came before this statute came into effect.  ...

---

[1]

He subsequently filed a "motion to fix typo" that the Clerk of the Court construed as an amended petition.  <u>See</u> Document 6.  To the extent that permission to file an amended petition is necessary, it is granted.

Ground two.   The state court ruling on petitioner's <u>Batson</u> challenges is in conflict with and contrary to constitutionally established criteria used to weigh such issues.

Supporting facts.   [T]he state court held that it was petitioner's position to trigger the third step of the <u>Batson</u> [analysis] when the criteria states if a race-neutral explanation is given, then the inquiry proceeds to the third step.   The state court failed to weigh the third step and your petitioner believe[s] that the state violated the terms of <u>Batson</u>.

<u>See</u> Document 6 at 2.

Hobbs subsequently filed a response to the petition at bar.  In the response, he generally maintained that Hammock's petition should be dismissed because "its claims are non-cognizable, ultimately procedurally defaulted, or meritless."  <u>See</u> Document 7 at 9.  With specific regard to Hammock's <u>ex post facto</u> claim, Hobbs maintained, <u>inter alia</u>, that the state Court of Appeals did not apply <u>Ark</u>. <u>Code Ann</u>. 12-12-905 in rejecting the claim on direct appeal but instead applied <u>Ark</u>. <u>Code Ann</u>. 12-12-906 and found that it clearly required him to register as a sex offender in Arkansas.  With specific regard to Hammock's <u>Batson</u> claim, Hobbs maintained, <u>inter alia</u>, that the decision on the claim by the state Court of Appeals was not contrary to, nor involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

The undersigned briefly reviewed the parties' submissions and determined that Hammock should be apprised of Hobbs' assertions and invited to file a reply.  Hammock was so apprised and invited to file a reply.

Hammock accepted the aforementioned invitation by filing a reply.   Liberally construing that submission, he appeared to advance several different assertions.   First, he again maintained that the application of Ark. Code Ann. 12-12-905, and the state Court of Appeals' interpretation of that statute, violated the ex post facto provision of the United States Constitution.   Second, he appeared to maintain that he is being incarcerated for a charge that Arkansas officials had agreed to nolle prosequi.   Last, he appeared to maintain that his failure to register as a sex offender was caused not by his own inaction but by the inaction of state officials.

The undersigned has now reviewed the parties' pleadings and exhibits.   On the basis of that review, the undersigned issues the following findings and recommendation.[2]

THE FIRST CLAIM.   Hammock first maintains that the application of Ark. Code Ann. 12-12-905, and the state Court of Appeals' interpretation of that statute, violated the ex post facto provision of the United States Constitution.   In support of that assertion, he maintains that his Washington conviction pre-dated the effective date of the Arkansas sex offender registration act.

The state Court of Appeals considered and rejected this claim in Hammock's direct appeal.   The state Court of Appeals specifically found the following:

---

[2]

In turning to address Hammock's two claims, the undersigned makes note of one matter.  Because it appears that the claims were largely presented to the state courts of Arkansas in the context of his direct appeal, his failure to appeal the denial of his state petition to correct an illegal sentence and his failure to obtain a ruling on his state petition for a writ of habeas corpus are of no concern.

… Hammock argues that his conviction for failing to register as a sex offender was an unconstitutional ex post facto application of the law and that the trial court erred in applying the registration requirements of the Sex Offender Registration Act of 1997, found at Arkansas Code Annotated … 12-12-901, … to him.  Specifically, he argues that … 12-12-905 … did not apply to him because the statute did not become effective until after his conviction.  This statute provides, in pertinent part:

(a) The registration or registration verification requirements of this subchapter apply to a person who:

(1) Is adjudicated guilty on or after August 1, 1997, of a sex offense, aggravated sex offense, or sexually violent offense;

(2) Is serving a sentence of incarceration, probation, parole, or other form of community supervision as a result of an adjudication of guilt on or after August 1, 1997, for a sex offense, aggravated sex offense, or sexually violent offense[.]

The trial court found that subsection (a)(2) was applicable to Hammock, as he was still serving some form of community supervision after August 1, 1997.  Hammock argues that the language of the statute "states that registration is applicable to him only if he was serving some form of community supervision for an adjudication of guilt on or after August 1, 1997."  (Hammock's emphasis.)

We hold that it is unnecessary to interpret … 12-12-905 in order to determine whether Hammock was required to register under it as a sex offender in Arkansas because the next successive statutory section, 12-12-906(a)(2)(A)-(B)(i), … clearly requires Hammock to register as a sex offender.  This statutory section requires in more definite terms:

(2) (A) A sex offender moving to or returning to this state from another jurisdiction shall register with the local law enforcement agency having jurisdiction within three (3) business days after the sex offender establishes residency in a municipality or county of this state.

-7-

(B)(i) Any person living in this state who would be required to register as a sex offender in the jurisdiction in which he or she was adjudicated guilty of a sex offense shall register as a sex offender in this state whether living, working, or attending school or other training in Arkansas.

Hammock's conviction in the state of Washington required that he register as a sex offender; therefore, under ... 12-12-906(B)(i), he is also required to register as a sex offender in Arkansas.

See Hammock v. State, 2009 WL 1405871.

The foregoing excerpt establishes that the state Court of Appeals did not apply Ark. Code Ann. 12-12-905 in rejecting Hammock's claim on direct appeal.  Instead, the state Court of Appeals applied Ark. Code Ann. 12-12-906 and found that it clearly required him to register as a sex offender in Arkansas because he had been ordered to do so in Washington.   The appellate court decision thus turned entirely on the interpretation of state law.  His challenge to the interpretation of state law is not within the ambit of federal habeas corpus review, and he is entitled to no relief on the claim.[3]

---

[3]

With regard to a claim founded on allegedly improper interpretation of state law, the Court of Appeals stated the following in Lupien v. Clarke, 403 F.3d 615, 619 (8th Cir. 2005):

"Determinations of state law made by a state court are binding on a federal court in habeas proceedings.  [Citations omitted].  We may not review questions of state law that have been decided by a state court, 'even under the deferential standard of 28 U.S.C. § 2254(d).'  [Citation omitted].  As the Supreme Court has emphasized, 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.'  Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ..."

Assuming, _arguendo_, that Hammock's claim implicates the <u>ex</u> <u>post</u> <u>facto</u> provision of the United States Constitution, and setting aside any concern as to whether he properly presented such a claim to the state Court of Appeals, it is clear that he is entitled to no relief on the claim.  He has failed to demonstrate how the application of <u>Ark</u>. <u>Code</u> <u>Ann</u>. 12-12-906 punished as a crime an act that was not criminal when done.  <u>See</u> <u>Williams v. Lee</u>, 33 F.3d 1010 (8th Cir. 1994) (state violates <u>ex</u> <u>post</u> <u>facto</u> clause if it punishes as a crime an act that was not criminal when done, removes a defense available when the act was committed, or increases the punishment for a crime after it was committed).

<u>BATSON CLAIM</u>.  Hammock next maintains that "[t]he state court ruling on [his] <u>Batson</u> challenges is in conflict with and contrary to constitutionally established criteria used to weigh such issues."  <u>See</u> Document 6 at 2.  In support of that assertion, he maintains that the state court did not give proper weight to the evidence of purposeful discrimination.

The state Court of Appeals considered and rejected this claim in Hammock's direct appeal.  The state Court of Appeals specifically found the following:

> ... Hammock, who is African-American, argues that the trial court's ruling on his <u>Batson</u> challenge was against the preponderance of the evidence.  He argued that the State exercised five peremptory challenges, four against African-American jurors and one against a Caucasian juror, [footnote omitted] in violation of <u>Batson v. Kentucky</u>, ...

In <u>Hinkston v. State</u>, … our supreme court set forth the three-step process to be used by our trial courts in the case of <u>Batson</u> challenges:

We have delineated a three-step process to be used in the case of <u>Batson</u> challenges. … First, the strike's opponent must present facts to raise an inference of purposeful discrimination; that is, the opponent must present a <u>prima facie</u> case of racial discrimination. … Second, once the strike's opponent has made a <u>prima facie</u> case, the burden shifts to the proponent of the strike to present a race-neutral explanation for the strike. … If a race-neutral explanation is given, the inquiry proceeds to the third step, wherein the trial court must decide whether the strike's opponent has proven purposeful discrimination. … Here, the strike's opponent must persuade the trial court that the expressed motive of the striking party is not genuine but, rather, is the product of discriminatory intent. …

A trial court's ruling on a <u>Batson</u> challenge will be reversed only when its findings are clearly against the preponderance of the evidence; some measure of deference is given to the trial court due to its opportunity to observe the parties and determine their credibility. …

When it was determined that the court reporter's recorder had not been on during his <u>Batson</u> challenge, the trial court summarized on the record both Hammock's <u>Batson</u> challenge and the State's explanation. The trial court stated that defense counsel made a <u>Batson</u> challenge to the prosecutor's five strikes; that the prosecutor explained that all of the strikes he made, including the one against the Caucasian juror, were supported by juror questionnaires that reflected that each juror had previous criminal charges filed against either the juror or a family member; and that the State's explanation was not disputed by defense counsel. The trial court also noted that it had made the State take one of the stricken jurors despite her answers on the questionnaire. The trial court then asked defense counsel if there was anything else. In response, defense counsel stated only that he had made an exception to the other three strikes made by the prosecutor. The prosecutor then offered that one of the stricken jurors had stated the day before that he held it against the prosecutor that he had sent his brother to prison; the prosecutor also noted that he did keep a black male on the jury. The colloquy continued. The trial court then stated that it was trying to be practical about the situation, noting

-10-

that "a lot" of African-Americans took themselves off the panel because of their reluctance to judge, which the court could do nothing about. Further, the trial court advised the prosecutor that the State was put on notice that if it was going to use the fact that the juror or a family member had been charged with any offense other than a traffic offense to strike a minority, there had to be "follow up" to find out if the offense "happened in the last twenty years or last two years, where did it happen, first cousin, second cousin, brother, sister." For emphasis, the trial court explained that being charged with an offense could not be used in an unlimited manner for excusing any particular race. Commenting that it was the best that could be done in the situation, the trial court reiterated that it had made the State take one of the stricken African-American jurors, which left two African-American jurors on the jury panel. Following this, the trial court, for the second time, asked defense counsel if there was anything else. Defense counsel responded only by asking that the record reflect that his client was African-American.

Here, Hammock concedes that the State's reason for striking the African-American jurors was race neutral. His argument, therefore, lies within the third prong of the test for a Batson challenge-that the trial court did not give him the opportunity to persuade it that the State's motive in striking the jurors was not genuine but was rather the product of discriminatory intent and he was therefore entitled to a new trial.

Our earlier recitation from the record of Hammock's Batson challenge indicates that the trial court gave Hammock two opportunities to add anything further to his challenge. The first time, defense counsel noted, without more, that he had made an exception to the other three strikes made by the prosecutor. The second time, defense counsel responded by asking, without more, that the record reflect that his client was African-American. The record reflects there was no attempt by defense counsel to add anything further, even after being asked by the trial court on two occasions. Though Hammock had the opportunity to make additional arguments to the trial court, he failed to do so. ...

See Hammock v. State, 2009 WL 1405871.

28 U.S.C. 2254(d) governs the disposition of Hammock's claim.   The section provides that a petition for writ of habeas corpus shall not be granted with respect to a claim that was adjudicated on the merits in state court unless the adjudication of the claim resulted in a decision that was: "(1) ... contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) ... based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   The foregoing mandates a "deferential review of state court decisions."   See Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001) [citation and internal quotations omitted].[4]

Did the adjudication of Hammock's Batson claim by the state Court of Appeals result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law?   The undersigned thinks not, and he is entitled to no relief on the claim.   Although Batson is clearly established federal law, he has failed to show how the appellate court's decision was contrary to, or involved an unreasonable application of, that law.   Specifically, he has failed to show that the decision cannot reasonably be justified under Batson.

---

[4]

"[M]ere disagreement with the [state] court's conclusions is not enough to warrant habeas relief. ...   Under the first prong of the statute, relief should not be granted unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. ...   Under the second prong, a state court's determination on the merits of a factual issue is entitled to a presumption of correctness. ..."   See Id. [citations and internal quotations omitted]..

Hammock has also not shown that the adjudication of his <u>Batson</u> claim by the state Court of Appeals resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  The state Court of Appeals' rejection of the claim was built upon an absence of proof, specifically, an absence of any proof of purposeful discrimination.  He has failed to show any facts he presented to the state Court of Appeals that were not considered.

<u>ADDITIONAL ASSERTIONS</u>.  Although not raised in the petition at bar, Hammock maintains that he is being incarcerated for a charge that Arkansas officials had agreed to <u>nolle</u> <u>prosequi</u>.  He is entitled to no relief on the assertion for at least three reasons. First, he never properly presented the assertion to the state courts of Arkansas.  Second, he has failed to support the assertion with any facts.  Last, the order for <u>nolle</u> <u>prosequi</u> indicates that the dismissal was with regard to another offense.[5]

Although not raised in the petition at bar, Hammock additionally maintains that his failure to register as a sex offender was caused not by his own inaction but by the inaction of state officials.  He is entitled to no relief on the assertion for at least two reasons.  First, he never properly presented the assertion to the state courts of Arkansas. Second, he has failed to support the assertion with any facts.

---

[5]

The docket number of the charge under attack in the petition at bar is CR-2008-0071-3.  <u>See</u> Document 2 at 1.  The document number of the charge in the order of <u>nolle</u> <u>prosequi</u> is CR-2007-160-3. <u>See</u> Document 10 at 12.

RECOMMENDATION.  On the basis of the foregoing, the undersigned recommends that Hammock's petition be dismissed.  All requested relief should be denied, and judgment should be entered for Hobbs.

DATED this ___16___ day of August, 2010.

_____
UNITED STATES MAGISTRATE JUDGE